UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 3:23-cr-22 |
| Plaintiff, | : | JUDGE THOMAS M. ROSE |
| v. | : | |
| | : | UNITED STATES' SENTENCING MEMORANDUM |
| JASON GLANTON, | : | |
| Defendant. | : | |

## INTRODUCTION

When law enforcement officers searched defendant Jason Glanton's home on February 7, 2023, they seized—among other items—nine firearms, 316 rounds of live ammunition, approximately $21,000 in drug proceeds, and more than 100 grams of a fentanyl-xylazine mixture. Glanton kept the drugs and most of the firearms unsecured in his house, where he lived with a three-year-old child and a thirteen-year-old child. Glanton also possessed these instrumentalities of death within 1,000 feet of Helke Elementary School, where approximately 400 children in kindergarten through third grade attended.

Glanton continued to traffic drugs even after law enforcement made this remarkable seizure from his home. When agents arrested Glanton approximately a month and a half later, Glanton had on his person nearly 75 grams of fentanyl and approximately $2,000 in drug proceeds. Once again, Glanton possessed deadly drugs near where young children gathered; this time, Glanton was across from Gettysburg Park, which features a playground and a basketball court. Glanton was about 700 feet away from the swingsets, slide, and jungle gym; the basketball

1

court was closer, about 600 feet away. And once again, the amount of fentanyl Glanton possessed was enough to kill hundreds of thousands of full-grown adults.

For these reasons, and the additional reasons given below, the United States respectfully requests that the Court sentence Glanton to a term of imprisonment of 170 months, followed by an eight-year term of supervised release.

## APPLICABLE LAW

The Sentencing Guidelines "should be the starting point and the initial benchmark for choosing a defendant's sentence." *United States v. Demma*, 948 F.3d 722, 727 (6th Cir. 2020) (internal quotations omitted). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Then, "the district court must weigh and apply the range of factors outlined in 18 U.S.C. § 3553(a)." *Id.* at 49-50. These include the nature and circumstances of the offense and the history and characteristics of the defendant and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). The Court should impose a sentence sufficient but not greater than necessary to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).

## STATEMENT OF FACTS

The United States respectfully incorporates by reference the offense conduct as detailed in paragraphs 16 through 18 of the PSR. (Doc. 29.)

## ARGUMENT

### I. Guidelines Calculation

The government agrees with the United States Probation Officer's calculation of Glanton's sentencing guideline range, which is 151 to 188 months' imprisonment. (Doc. 29 ¶ 75.)

### II. Analysis of the § 3553(a) Factors

A sentence of 170 months—a sentence in the middle of Glanton's sentencing guideline range—followed by an eight-year term of supervised release is sufficient, but not greater than necessary, to achieve the sentencing goals as contemplated by Congress and the United States Sentencing Commission. In this case, a sentence of 170 months is appropriate given the nature of the offense; the need to protect the public, including children; the need for deterrence in light of the ongoing opioid epidemic; and the history and characteristics of the defendant.

**A. Near an elementary school filled with children in kindergarten through third grade, Glanton possessed enough fentanyl to kill 500,000 adults.**

When agents searched Glanton's home on February 7, 2023, they discovered that Glanton kept an arsenal of weapons—nine firearms and 316 live rounds of ammunition—and enough fentanyl to kill 500,000 adults.[1] Glanton possessed the firearms and fentanyl while fewer than 900 feet away from Helke Elementary School, which services approximately 400 students in kindergarten through third grade.[2] Glanton's decision to traffic fentanyl thus put each and every child, teacher, and staff member at Helke Elementary School in danger.

Not only that, Glanton chose to endanger the two minor children living under his own roof. Glanton's then-girlfriend had moved in with her two children, aged three and thirteen years old, several months before agents seized the cache of fentanyl and weapons from Glanton's home.

---

[1] *See* the DEA's "Facts About Fentanyl," *available at*: https://www.dea.gov/resources/facts-about-fentanyl (last accessed December 14, 2023).
[2] *See* the Helke Elementary School website, *available at*: https://helke.vbcsd.com.

3

Glanton kept the fentanyl and loaded firearms unsecured and easily accessible to the children. It only takes a two-milligram dose—similar to five to seven grains of salt, or about the weight of a mosquito[3]—to cause death for an average adult.[4] For children, even the smallest exposure can lead to death. In 2021, 40 infants and 93 children aged one to four years old died from a fentanyl overdose, which experts attributed to the fentanyl being left within reach in the children's home.[5]

### B. Even after agents searched his house, Glanton continued to traffic drugs, and did so near a public playground.

Glanton was neither chastened nor deterred after law enforcement searched his home on February 7, 2023. Later, when agents executed a federal warrant for Glanton's arrest on March 20, 2023, they found him inside his car at 49 Decker Street in Dayton, Ohio, approximately 300 feet from Gettysburg Park. Gettysburg Park is a public park that includes playground equipment such as a slide, two swing sets, and a basketball court, thus meeting the federal definition of "playground."[6] Notably, Glanton's trafficking "business" was sophisticated enough that Glanton had a secret compartment in his car to hide his drugs and drug proceeds.

### C. Fentanyl—and particularly fentanyl laced with xylazine—poses an extreme danger, and the need for deterrence in Ohio is urgent.

The Centers for Disease Control and Prevention reported that more than two thirds (68%) of the reported 107,081 drug overdose deaths in the United States in 2022 involved synthetic

---

[3] *See* AP U.S. News report, "As more children die from fentanyl, some prosecutors are charging their parents with murder," published September 8, 2023, *available at*: https://apnews.com/article/children-fentanyl-deaths-parents-charged-california-4767deae62a1ae1d9fa17a3edcc73f73 (last accessed December 14, 2023).
[4] *See* the DEA's "Facts About Fentanyl," *available at*: https://www.dea.gov/resources/facts-about-fentanyl (last accessed December 14, 2023).
[5] *See* U.S. News article, "U.S. Child Deaths From Fentanyl Jumped 30-Fold in Just 8 Years," published May 8, 2023, *available at:* https://www.usnews.com/news/health-news/articles/2023-05-08/u-s-child-deaths-from-fentanyl-jumped-30-fold-in-just-8-years (last accessed December 14, 2023).
[6] *See* 21 U.S.C. § 860(e)(1) ("The term 'playground' means any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.").

4

opioids, principally fentanyl, and that xylazine—a non-opiate sedative, analgesic, and muscle relaxant authorized by the U.S. Food and Drug Administration for veterinary use only—has been increasingly detected in fentanyl in the U.S. drug supply.[7] Known by the street names "tranq dope" and "zombie dope," xylazine has been detected in a growing number of overdose deaths, following the same path fentanyl began a decade ago.[8]

The particular fentanyl concoction Glanton was trafficking contained xylazine (Doc. 29 ¶ 17), which, as the CDC reports, has no known antidote.[9] A DEA Public Safety Alert described xylazine as "making the deadliest drug threat our country has ever faced, fentanyl, even deadlier."[10] The Southern District of Ohio is on the forefront of xylazine's dangerous takeover; it is cheap and easy to get, so traffickers frequently add it to their fentanyl supply to increase their profits.[11] Xylazine prolongs users' euphoria but has a catastrophic effect on the human body, leading to dangerously slow heart rates, low blood pressure, respiratory depression, and a decrease in blood supply to the skin, resulting in gaping wounds and necrotic tissue.[12] Xylazine's effects can result in wounds so serious they often require amputation.[13] Alarmingly, an overdose involving xylazine is harder to reverse because it does not respond to naloxone, so bystanders

---

[7] *See* "Illicitly Manufactured Fentanyl–Involved Overdose Deaths with Detected Xylazine — United States, January 2019–June 2022," CDC Morbidity and Mortality Weekly Report, published June 30, 2023, *available at*: https://www.cdc.gov/mmwr/volumes/72/wr/mm7226a4.htm#:~:text=In%202022%2C%20provisional%20data%20indicated,(IMFs)%20(1). (last accessed December 14, 2023).
[8] *See* "DEA Reports Widespread Threat of Fentanyl Mixed with Xylazine," *available at:* https://www.dea.gov/alert/dea-reports-widespread-threat-fentanyl-mixed-xylazine (last accessed December 14, 2023).
[9] *Id.*
[10] *Id.*
[11] *See* "Not just fentanyl - Animal tranquilizer xylazine is embedded in Ohio's drug supply," The Columbus Dispatch, published October 16, 2023, *available at*: https://www.dispatch.com/story/news/drugs/2023/10/16/xylazine-fentanyl-ohio-kentucky-indiana/71207163007/ (last accessed December 14, 2023).
[12] *Id.*
[13] *See generally* "Tranq Dope: Animal Sedative Mixed with Fentanyl Brings Fresh Horror to U.S. Drug Zones," The New York Times, published January 7, 2023, *available at*: https://www.nytimes.com/2023/01/07/health/fentanyl-xylazine-drug.html (last accessed December 14, 2023).

and first responders may not be able to save those experiencing imminently life-threatening effects.[14]

In Ohio specifically, the need to deter trafficking fentanyl—especially fentanyl laced with xylazine—is particularly strong. According to the Centers for Disease Control and Prevention, Ohio has the seventh-highest drug overdose death rate in the United States, with 5,397 lives lost in 2021, the most recent year for which data is available.[15] Alarmingly, recent research revealed that Ohio ranked third in the nation for the most xylazine-positive tests in fentanyl samples.[16] Indiana and Kentucky ranked fifth and seventh, respectively, underscoring the need to deter drug traffickers in our region from peddling this extraordinarily dangerous new fentanyl amalgamation.

Significant sentences for these trafficking offenses—especially those taking place near children—are essential for general deterrence. A sentence of 170 months deters others from engaging in this type of criminal conduct by showing that the distribution of fentanyl and fentanyl mixtures, particularly during an ongoing addiction crisis in the United States and in locations where minors congregate, will be met with substantial prison time.

//

//

//

---

[14] *See* "Not just fentanyl - Animal tranquilizer xylazine is embedded in Ohio's drug supply," The Columbus Dispatch, published October 16, 2023, *available at*: https://www.dispatch.com/story/news/drugs/2023/10/16/xylazine-fentanyl-ohio-kentucky-indiana/71207163007/ (last accessed December 14, 2023).

[15] *See* "Drug Overdose Mortality by State," *available at:* https://www.cdc.gov/nchs/pressroom/sosmap/drug_poisoning_mortality/drug_poisoning.htm (last accessed December 14, 2023).

[16] *See* "Not just fentanyl - Animal tranquilizer xylazine is embedded in Ohio's drug supply," The Columbus Dispatch, published October 16, 2023, *available at*: https://www.dispatch.com/story/news/drugs/2023/10/16/xylazine-fentanyl-ohio-kentucky-indiana/71207163007/ (last accessed December 14, 2023).

### D. Glanton had the skills to find legitimate employment, but he chose to traffic drugs instead.

Instead of the February 2023 search serving as a wake-up call, Glanton remained emboldened to traffic drugs, and to do so near places children congregate. As noted in the PSR, Glanton—unlike many criminal defendants who appear before this Court—had specific career training, having earned an electrician certificate from Miami Valley Career Technology Center in Clayton, Ohio, in 2010. (Doc. 29 ¶ 68.) At the time of Glanton's offense conduct, Ohio was in desperate need of skilled workers such as electricians,[17] and the U.S. Bureau of Labor Statistics reports that the country needs around 80,000 new electricians every year.[18] Even if Glanton did not want to work in that field, the job market overall was strong, at only 3.6% unemployment in February 2023 when Glanton engaged in the offense conduct.[19] In other words, Glanton made a choice not to seek a legitimate job.

### E. Glanton's history and characteristics support a mid-guidelines sentence and an eight-year period of supervised release.

Significantly, the PSR notes that Glanton has two pending theft charges in separate jurisdictions. (Doc. 29 ¶ ¶ 52-53.) In the pending 2017 theft case out of Arizona, Glanton admitted to his guilt. (*Id.* ¶ 53.) Glanton would have gained at least one criminal history point had he not fled that jurisdiction, which would have increased his criminal history category to III and his sentencing guideline range to 168-210 months. For this reason, Glanton's criminal history score underrepresents his past criminal conduct; a sentence of 170 months would be at

---

[17] *See, e.g.,* "In-Demand Jobs Week: Two Career Paths Needing Skilled Individuals," published May 5, 2023, *available at:* https://com.ohio.gov/about-us/media-center/news/in-demand-jobs-week-two-career-paths-needing-skilled-individuals (last accessed December 14, 2023).
[18] *See* "Occupational Outlook Handbook – Electricians," *available at*: https://www.bls.gov/ooh/construction-and-extraction/electricians.htm (last accessed December 14, 2023).
[19] *See, e.g.,* "U.S. Employers Added a Solid 311,000 Jobs in February," The Wall Street Journal, published March 10, 2023, *available at*: https://www.wsj.com/articles/february-jobs-report-unemployment-rate-economy-growth-2023-e4b1d318 (last accessed December 14, 2023).

the low end of Glanton's guidelines had he not avoided being held to account for a theft he admitted to committing.

Glanton reported having a difficult upbringing and, like an estimated 4.4 million American adults,[20] suffers from bipolar disorder. (*Id.* ¶¶ 55- 65.) Glanton reports that he does not want medication to treat his mental health issues because he does not like the way the medication makes him feel. (*Id.* ¶ 65.) Treatment for his mental health issues while in custody, and a condition of supervised release that requires Glanton to comply with mental health treatment and all medical recommendations from his treating physicians, would serve the statutory sentencing purposes of public protection and rehabilitation.

## **CONCLUSION**

Glanton's drug trafficking behavior—which involved large quantities of fentanyl adulterated with xylazine, as well as an arsenal of nine firearms and 316 rounds of ammunition—is extremely serious. Glanton's criminal behavior is made more egregious by the fact that he repeatedly endangered minors by possessing the deadliest drug in the country near an elementary school and in a home with minors aged three and thirteen years old, and then yet again near a public playground. A sentence of 170 months—which falls in the middle of his guidelines range—reflects the aggravating factors that set Glanton apart from the mine-run drug trafficker, while also acknowledging mitigating factors such as Glanton's difficult childhood and mental health struggles. Critically, such a sentence will serve to deter future criminal conduct and protect the public.

//

//

---

[20] *See* the National Institute of Mental Health website, *available at:* https://www.nimh.nih.gov/health/statistics/bipolar-disorder (last accessed December 14, 2023).

For these reasons, the government respectfully requests this Court sentence Glanton to 170 months' imprisonment, followed by eight years of supervised release.

        Respectfully submitted,

        KENNETH L. PARKER
        United States Attorney

        *s/Kelly K. Rossi*
        KELLY K. ROSSI (NM 147107)
        Assistant United States Attorney
        200 W. Second Street
        Dayton, Ohio 45402
        Kelly.Rossi@usdoj.gov